IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESSICA MANZO,<br>f/k/a Jessica Green,<br><br>Defendant. | Case No. CR13-2019<br><br>ORDER FOR PRETRIAL DETENTION |

On the 26th day of August, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Justin Lightfoot. The Defendant appeared personally and was represented by her attorney, Chad R. Frese.

## I. RELEVANT FACTS AND PROCEEDINGS

On August 15, 2013, Defendant Jessica Manzo (indicted as Jessica Green) was charged by Indictment (docket number 3) with conspiracy to possess and distribute pseudoephedrine as a precursor. At the arraignment on August 22, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on October 21, 2013.

At the hearing, Joshua Mulnix, a special agent with the Iowa Division of Narcotics Enforcement, testified regarding the circumstances underlying the instant charge. Mulnix testified that pseudoephedrine logs maintained by retailers showed that Defendant and her husband, co-defendant Enrique Manzo, purchased pseudoephedrine together over 20 times

1

between June 2012 and April 2013. Wal-Mart video surveillance confirms that Defendant and Enrique Manzo purchased pseudoephedrine together, often within minutes of each other. The video surveillance also shows that Defendant and Enrique Manzo purchased pseudoephedrine with others, including Judith Green (Defendant's sister) and Michael Tosh. In the video, the four took turns purchasing pseudoephedrine, and then met in the parking lot to give the pseudoephedrine to Defendant and Enrique Manzo.

On April 29, 2013, law enforcement executed a search warrant at Defendant's residence. Officers found several small baggies of methamphetamine. Officers also found drug paraphernalia containing methamphetamine residue, and empty pseudoephedrine blister packages.

On May 20, 2013, Defendant and Enrique Manzo were interviewed together by law enforcement. They admitted collecting pseudoephedrine to give to Chad Root for the purpose of manufacturing methamphetamine.[1] Root was also interviewed by law enforcement and stated that Defendant and Enrique Manzo supplied him with multiple boxes of pseudoephedrine. Additionally, Judith Green, who was seen purchasing pseudoephedrine with Defendant and Enrique Manzo on the Wal-Mart surveillance video, also told law enforcement that she purchased pseudoephedrine to give to Defendant and Enrique Manzo for the manufacture of methamphetamine.

According to the pretrial services report, Defendant is 30 years old. She was born in West Union, Iowa, and is a lifelong resident of northeast Iowa. Defendant has three sisters who live in northeast Iowa and one brother who lives in Kansas. Defendant married co-defendant Enrique Manzo in May 2013. She has no children from her marriage, but has two children from two prior relationships. One child resides with a foster family in Oelwein, Iowa, and the other child lives "back and forth" between her residence and the

---

[1] Chad Root has pleaded guilty in federal court to methamphetamine charges.

child's father's residence. At the time of her arrest on the instant federal charge, Defendant was residing with her sister, Judith Green. If released, she would return to her sister's residence.

For the past year, Defendant has been employed by Echo Valley Redemption Center. Defendant is in good physical health. She told the pretrial services officer that she has been suffering from anxiety and depression for the past six months. She has been prescribed Xanax and Wellbutrin by her family doctor. Defendant told the pretrial services officer that she used marijuana on a daily basis from age 21 to 23, but has not used marijuana for the past 8 years. She also stated that she used methamphetamine on a daily basis from age 19 to 27, but her usage has decreased since that time. According to Defendant, she no longer "searches" for methamphetamine, but she will use it if it is given to her. Defendant completed a 30-day inpatient treatment program at Prairie Ridge Addiction Treatment Services in 2011.

Turning to Defendant's criminal record, on September 27, 2000, at age 18, Defendant was charged and later convicted of fifth degree theft. In July 2002, Defendant was charged and later convicted with possession of a controlled substance precursor. She was given a 5-year suspended prison sentence and 5 years probation with 1 year in a residential facility. Her probation was discharged in October 2007. While the possession charge was pending, Defendant was charged with a controlled substance violation, 3 counts of possession of a controlled substance precursor, and possession of a controlled substance. Ultimately all of those charges were dismissed.

In February 2009, Defendant was charged and later convicted of purchase of pseudoephedrine, first offense. On September 1, 2010, Defendant was charged with possession of lithium, possession of pseudoephedrine, possession of perchloric acid, possession of a controlled substance, and possession of drug paraphernalia. The

3

paraphernalia charge was ultimately dismissed. On the other possession charges, Defendant was given a 5-year suspended prison sentence and 5 years probation.[2]

On December 29, 2011, while on probation, Defendant was charged and later convicted of possession of a controlled substance, third or subsequent offense. She was given a 5-year suspended prison sentence, 5 years probation, and 1 year in a residential facility. On the same date, Defendant was charged with possession of drug paraphernalia. However, that charge was ultimately dismissed.

On July 5, 2013, while on probation, Defendant was charged with fifth degree theft. On July 9, 2013, while on probation, Defendant was charged with violation of a no contact order. On July 27, 2013, while on probation, Defendant was again charged with violation of a no contact order. All three of these charges remain pending in state court. Additionally, Defendant was on probation at the time of the incidents giving rise to the instant federal charge.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

---

[2] On January 4, 2012, petition for violation of probation was filed against Defendant. The petition alleged that Defendant tested positive for methamphetamine of three separate occasions and failed to remain law abiding based on an arrest in December 2011. In February 2012, Defendant was found in violation of her probation and sentenced to 1 year in a residential facility. She was released from the residential facility on June 15, 2012.

4

The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and

5

circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

6

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to possess and distribute pseudoephedrine as a precursor. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, there is a rebuttable presumption in favor of detention. The weight of the evidence against Defendant is strong. Defendant admitted to law enforcement that she purchased pseudoephedrine to give to others to be used in the manufacture of methamphetamine. Defendant's admissions are confirmed by pseudoephedrine logs and Wal-Mart video surveillance. Additionally, there are witnesses who will testify that Defendant purchased pseudoephedrine to be used in the manufacture of methamphetamine.

As a general proposition, the manufacture of methamphetamine constitutes a general danger to the community. Defendant has a history of committing additional offenses while on pretrial release and probation, including the alleged instant federal offense. Defendant has allegedly violated a no contact order twice in the past seven weeks. Additionally, Defendant lacks stable employment and a stable residence. Based on the serious nature of the offense, all of the facts and circumstances, and the rebuttable presumption, the Court finds that there is no condition or combination of conditions that will reasonably assure the safety of the community or Defendant's appearance for court proceedings. Therefore, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will

reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (August 22, 2013) to the filing of this Ruling (August 26, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 26th day of August, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA